UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUSHYANT R.,[1] | No.  1:26-cv-00502-JLT-SKO (HC) |
| Petitioner, | **FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| SERGIO ALBARRAN, et al., | **[Doc. 1]** |
| Respondents. | **[7-DAY OBJECTION DEADLINE]** |

Petitioner Dushyant R. is a citizen of India who entered the United States without inspection on or about January 2, 2023. (Doc. 1 at 4.) He was encountered by Border Patrol and released on parole on the same day. (Id.) He has filed applications for asylum, withholding of removal, and protections under the Convention Against Torture, which are currently pending. (Id.) Petitioner spent the next two-and-a-half years living in the United States. (Id.) He has well-established ties to the community and lives with his relatives in Pleasanton, California. (Id.) He has no criminal record, and he states he has complied with all conditions of supervision. (Id. at 5.)

On July 8, 2025, Petitioner reported as instructed to his Immigration and Customs Enforcement ("ICE") check-in at the San Francisco office and was abruptly detained. (Id.)

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. See Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

Petitioner states he was given no notice, explanation, or hearing providing the basis for his detention and has been detained since that date. (Id.)

On January 21, 2026, Petitioner filed the instant habeas petition challenging his re-detention, as well as a motion for temporary restraining order. (Docs. 1, 2.) On January 21, 2026, the District Court denied the motion and directed Respondents to file a response within thirty (30) days. (Doc. 4.)  On January 28, 2026, Petitioner filed a motion for preliminary injunction. (Doc. 5.) On January 29, 2026, the District Court referred the motion to the undersigned. (Doc. 6.)

On February 10, 2026, Petitioner filed a First Amended Petition along with a second motion for temporary restraining order. (Docs. 10, 11.)  On February 19, 2026, Respondents filed a response to the petition. (Doc. 13.) On March 5, 2026, Petitioner filed a reply. (Doc. 14.)

## I.    JURISDICTION AND LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus when the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

## III.    DISCUSSION

Civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas v. Davis, 533 U.S. 678, 690 (2001); Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Petitioner presents the following claims for relief: 1) he contends his continued detention is unlawful (Doc. 10 at 13); 2) he claims that Respondents have violated his due process rights by detaining him for a prolonged period of time without an individualized custody determination (Doc. 10 at 13-15); 3) he alleges Respondents have violated the Administrative Procedure Act by acting arbitrarily and capriciously in continuing to detain him without individualized justification (Doc. 10 at 15-17); 4) he claims

violations of his equal protection rights because the government has treated him differently from other similarly situated detainees (Doc. 10 at 17-19); and 5) he claims his continued detention violates the Suspension Clause (Doc. 10 at 19-21.) Because the Court finds merit to his claim that his detention without allowing for a substantive bond hearing violates his due process rights, the Court declines to address Petitioner's other grounds for relief given that the remaining grounds for relief all challenge Respondents' refusal to provide a bond hearing.

Respondents contend Petitioner is subject to mandatory detention under 8 U.S.C. §1225(b)(1). (Doc. 13 at 3-6.) They appear to have abandoned their previous argument that Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2)(A). Respondents contend Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(1).[2] Respondents argue that because Petitioner was never admitted into the United States, he is thus an applicant for admission. Petitioner maintains that his detention is pursuant to § 1226(a), since he was paroled into the United States pursuant to § 1226(a) shortly after he was initially detained. Petitioner's claim is persuasive.

Title 8 U.S.C. §1225(b)(1), by its own language, governs the "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." According to the text of Section 1225(b)(1)(A)(i), a noncitizen "who is arriving in the United States" and satisfies the other criteria is subject to mandatory detention pending expedited removal. The plain meaning of the word "arriving" is being "in the process of reaching" a destination. Coalition for Humane Immigrant Rights v. Noem, 805 F. Supp. 3d 48, 90 (D.D.C. 2025). The words "arriving," "arrival," and "arrive" in Section 1225 appear to refer to a process that occurs upon physical entry into the United States, "not an interminable ... status" that attaches to a noncitizen upon arrival. Id. (citing approvingly this argument made by plaintiffs based on the text of 8 U.S.C. § 1225(b)(1)(A)(i), (F), (b)(2)(C), (d)(2)). Therefore, an "arriving alien" is one

---

[2] The Government does not explain why it does not claim that Petitioner is detained pursuant to § 1225(b)(2) in this case, as it has in most other cases, rather than § 1225(b)(1). The Court surmises this new position is due to the overwhelming weight of authority in the Circuit against their § 1225(b)(2)(A). The change lends credence to Petitioner's argument that the Government's exercise of its authority to re-detain was arbitrary and capricious.

who is in the process of reaching the United States. See United States v. Rowland, 826 F.3d 100, 108 (2d Cir. 2016) ("If the meaning [of a statute] is plain, the inquiry ends there."); Torres v. Holder, 764 F.3d 152, 156 (2d Cir. 2014), *aff'd sub nom*. Torres v. Lynch, 578 U.S. 452, 136 S.Ct. 1619, 194 L.Ed.2d 737 (2016) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.")

As someone who has been physically present in the United States for over two years, Petitioner is not "an alien ... who is arriving in the United States." See Al Otro Lado v. Wolf, 952 F.3d 999, 1012 (9th Cir. 2020) (explaining that a "person standing at the border is ... [at] the penultimate stage in the process of arriving in the United States" within the meaning of section 1225). And because petitioner was paroled into the United States shortly after being apprehended, he is not an "alien ... who has not been admitted or paroled ...." Id. The Court agrees with other courts which have found that a noncitizen who has been paroled into the United States cannot later be subject to expedited removal, even if their parole has expired or been terminated. See Coalition for Humane Immigrant Rights v. Noem, 2025 WL 2192986, at *21–27; N.Y.V.D. v. Santracruz, No. 5:25-CV-03404-WLH-SP, 2025 WL 3786964, at *3 (C.D. Cal. Dec. 23, 2025); Aviles-Mena v. Kaiser, No. 25-CV-06783-RFL, 2025 WL 2578215, at *4–5 (N.D. Cal. Sept. 5, 2025); Robles-Rodriguez v. Lyons, 2026 WL 303482, at *4 (E.D. Cal. Feb. 4, 2026).

Respondents' contention that § 1225(b) applies to aliens who have been released into the country and then re-detained years later has been almost universally rejected by district courts throughout the country, including this Court. Valencia v. Chestnut, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (noting that "[h]ere in the Eastern District of California, recent decisions have largely rejected the government's interpretation of Section 1225(b) as applicable to all 'applicants for admission,'" recognizing "[o]ther district courts have also reached the result that Section 1226(a), not Section 1225(b), provides the appropriate framework for noncitizens already residing in the United States," and collecting cases). As it has done on previous occasions, this Court recommends following the majority approach in finding that Petitioner's re-detention is governed by § 1226(a), not § 1225(b). See, e.g., Ortiz Donis v. Chestnut, 1:25-CV-

4

01228-JLT, 2025 WL 2879514 at *3–6 (E.D. Cal. Oct. 9, 2025); see also M.R.R. v. Chestnut, No. 1:25-CV-01517-JLT, 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025); Hortua v. Chestnut, et al., No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025); Barco Mercado v. Francis, No. 25-CV-6582 (LAK), —— F.Supp.3d ——, ——, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (estimating over 350 cases ruled the DHS policy improper across 160 different judges sitting in about 50 different courts nationwide); Mirley Adriana Bautista Pico v. Kristi Noem, No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases); Armando Modesto Estrada-Samayoa v. Orestes Cruz, No. 1:25-CV-01565-EFB (HC), 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).

The Court next turns to the analysis of Petitioner's due process claim. Due process claims are analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

### A. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147–49 (1997). Even when a statute allows the Government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [Government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481–84.

Immigration officials' January 2023 release of Petitioner on his own recognizance pending his immigration proceedings was similar as it allowed him to live in the country subject to supervision, out of custody, for over 2 years. That time inherently allowed Petitioner to form "enduring attachments of normal life." Id. at 482. The Court concludes that Petitioner's original release and time out of custody gave rise to a constitutionally protective liberty interest.

Because the Court concludes that Petitioner has a protected liberty interest in his release, see Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); Ortega v. Kaiser, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest), the Court must next determine what process is due before the Government may terminate Petitioner's liberty.

### B. The Mathews Factors Demonstrate Petitioner is Entitled to a Pre-Deprivation Bond Hearing

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the Mathews v. Eldridge factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).

Turning to the first factor, Petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from Government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for over 2 years, and during that time, he has lived, worked, and developed ties in the community. His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the Petitioner] has not received any bond or custody redetermination hearing." A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla, 704 F. Supp. 3d at 1172. Petitioner has no criminal history and has complied with the conditions of his parole. Further, no neutral arbiter has determined whether the facts show that Petitioner is a flight risk or danger to the community. Given the absence of any procedural safeguards to determine if his detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." A.E., 2025 WL 1424382, at *5.

Third, although the Government has a strong interest in enforcing the immigration laws, the Government's interest in re-detaining Petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. Doe, 2025 WL 691664, at *6. "If the

7

Government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." Ortega, 415 F. Supp. 3d at 970.

On balance, the Mathews factors show that, by contending that Petitioner is detained pursuant to §1225(b)(1), Respondents have unlawfully denied Petitioner a bond hearing before a neutral arbiter to determine whether he poses a risk of danger to the public or a flight risk. The Court finds that Petitioner is entitled to a substantive bond hearing pursuant to § 1226(a). And consistent with the numerous decisions of other courts in this circuit who have ruled on this issue, at such a hearing the burden would be on the Government to prove that Petitioner is a flight risk or danger to the community by clear and convincing evidence. See, e.g., Ramirez Clavijo v. Kaiser, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025) (reaching the same conclusion); Garcia, 2025 WL 1927596, at *5 (same); Pinchi v. Noem, No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025) (same); Ortega, 415 F. Supp. 3d at 970 (same); Doe, 2025 WL 691664, at *6 (same); Diaz v. Kaiser, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (same); Romero v. Kaiser, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022) (same); Vargas v. Jennings, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (same).

## V.    CONCLUSION & RECOMMENDATION

The Court therefore finds merit to Petitioner's claim that Respondents have violated Petitioner's due process rights by continuing to detain him without providing him with a bond hearing pursuant to § 1226(a) before a neutral arbiter wherein the Government must establish that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified. For the foregoing reasons, the Court hereby RECOMMENDS:

1) The petition for writ of habeas corpus be GRANTED;

2) The motions for preliminary injunction be DISMISSED AS MOOT;

3) Respondents PROVIDE Petitioner a substantive bond hearing before a neutral arbiter in which the Government bears the burden of proving, by clear and convincing evidence, that Petitioner presents a flight risk or danger to the community.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within seven (7) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:    **March 10, 2026**                     /s/ Sheila K. Oberto
                                          UNITED STATES MAGISTRATE JUDGE